REQUESTED BY: Gerald L. Vap, Chairman
Nebraska Public Service Commission
You have requested our opinion regarding whether transportation services provided pursuant to contracts executed by several entities with the Nebraska Department of Health and Human Services ["DHHS"] are subject to the Nebraska Public Service Commission's jurisdiction to regulate motor carriers. The specific questions you ask us to address are: (1) Whether the transportation provided under the contracts constitutes the transport of passengers "for hire", thus precluding application of the exclusion from Commission jurisdiction of "private carriers" as defined in Neb. Rev. Stat. § 75-302(16) (2009); and (2) Whether these transportation services fall within the exception from Commission jurisdiction for "escort services" contained in Neb. Rev. Stat. § 75-303(11) (2009).
For the reasons outlined below, we conclude that: (1) The entities providing the transportation services required by the contracts are engaged in "for hire" transportation; and (2) The "escort services" exception does not apply to these transportation services. *Page 2 
 I. FACTUAL BACKGROUND
In November, 2009, DHHS's Division of Children and Family Services [the "Division"] entered into "Service Delivery and Service Coordination Contracts" with Cedars Home for Children, KVC Behavioral Health Care — Nebraska, Visinet, Inc., and Nebraska Families Collaborative. Boys and Girls Home of Nebraska also entered into a "Service Delivery and Service Coordination Contract" with the Division in December, 2009. The contracts are "[t]o provide an individualized system of care for families and their children and youth who are wards of the State of Nebraska involved in the Child Welfare and Juvenile Services System or are non-court involved children and families involved in the Child Welfare System." Service Delivery and Service Coordination Contract ["Service Contract"] at 1. Under the Service Contracts, these entities [collectively "the Contractors"] are to provide comprehensive case management and coordination services, including counseling, treatment, and education. In addition, the Contractors are "responsible for providing all in-state and out-of-state transportation related to the Contractor's primary business of serving the needs of children, youth, and families." Service Contract at 6 ¶ 11.a. The Contractors are compensated for the provision of all services under the Service Contracts in a lump sum amount, which is paid on a flat monthly basis. Service Contract at 1-2.
The "Transportation Standards" in the Service Contracts provide that "[t]he Contractor must follow all Department policies, rules and regulations and provisions contained in the Manual regarding transportation. . .", and is "responsible for all secure transportation in compliance with Department requirements." Service Contract at 6 ¶ 11.b. and f. "The Contractor is responsible for ensuring that it complies with all applicable Public Service Commission regulations and requirements to the extent they apply to the Contractor's activities in performance of [the] contract. . .", and "[t]he Contractor agrees to utilize an escort for all commercial transportation services utilized for children ages 12 and under or as needed for a youth ages 13 through 18." Service Contract at 6 ¶ 11.d. The Contractor is also required "to make reasonable efforts to maintain consistency in the individual driver(s) providing transportation and/or escort services for the child or youth." Service Contract at 6, ¶ 11 .e.
None of the Contractors, with the exception of Visinet, holds a certificate as a common carrier or permit as a contract carrier required to operate as a motor carrier of passengers for hire in intrastate commerce in Nebraska.[1] The Contractors contend they are not required to obtain a certificate or permit to perform the transportation services required under the Service Contracts because: (1) The transportation services are "not for hire", and they therefore are acting as "private carriers" as defined in Neb. Rev. Stat. § 75-302(16) (2009) which are not subject to the Commission's jurisdiction; and (2) The *Page 3 
transportation services fall within the exclusion from Commission regulation provided for "escort services" in Neb. Rev. Stat. § 75-303(11) (2009).
II. ANALYSIS
 A. Are the Contractors "Private Carriers" Not Subject to CommissionJurisdiction Because the Transportation Services Provided Under theService Contracts are "Not For Hire"?
Article IV, § 20, of the Nebraska Constitution, provides, in part, that the Commission's powers and duties "shall include the regulation of rates, service, and general control of common carriers as the Legislature may provide by law. . . ." The powers enumerated in this constitutional provision apply only to common carriers. NebraskaPublic Service Comm'n v. Nebraska Public Power Dist.,256 Neb. 479, 590 N.W.2d 840 (1999). Neb. Rev. Stat. § 75-109 (2009) provides that the Commission "shall regulate and exercise general control as provided by law over all common carriers and contract carriers engaged in the transportation of freight or passengers for hire or furnishing telecommunication services for hire in Nebraska intrastate commerce." Neb. Rev. Stat. § 75-109.01(5) (2009) vests the Commission with jurisdiction over "[m[otor carrier registration and safety pursuant to sections 75-301 to 75-322, 75-369.03, 75-370, and 75-371. . . ."
The Commission's jurisdiction and authority to regulate motor carriers thus extends to both common carriers and contract carriers. "Common carrier" is defined as "any person who or which undertakes to transport passengers or household goods for the general public in intrastate commerce by motor vehicle for hire, whether over regular or irregular routes, upon the highways of this state. . . ." Neb. Rev. Stat. § 75-302(5) (2009). "Contract carrier means any motor carrier which transports passengers or household goods for hire other than as a common carrier designed to meet the distinct needs of each individual customer or a specifically designated class of customers without any limitation as to the number of customers it can serve within the class. . . ." Neb. Rev. Stat. § 75-301(6) (2009), Motor carriers must be issued a certificate of public convenience and necessity by the Commission granting authority to operate as common carriers. Neb. Rev. Stat. §§ 75-302(2) and 75-311(11) (2009). Motor carriers seeking to operate as contract carriers must be issued a permit to operate by the Commission. Neb. Rev. Stat. §§ 75-302(14) and75-311(2) (2009). A "private carrier" is defined as "any motor carrier which owns, controls, manages, operates, or causes to be operated a motor vehicle to transport passengers or property to or from its facility, plant, or place of business, or to deliver to purchasers its products, supplies, or raw materials (a) when such transportation is within the scope of and furthers a primary business of the carrier other than transportation and (b) when not for hire." Neb. Rev. Stat. § 75-302(16) (2009). The Commission has no jurisdiction to regulate private carriers. Neb. Rev. Stat. § 75-301(17) (2009) ("Nothing in sections 75-301 to 75-322 shall apply to private carriers. . . ."). *Page 4 
The Contractors are not operating as "common carriers", as they are not providing transportation "for the general public." The transport provided by the Contractors to DHHS clients under the Service Contracts, however, meets the definition of a "contract carrier" because it involves contracting to provide transportation for a specifically designated class of customers. The question then becomes whether this transportation is "for hire".
The term "for hire" is not defined by statute. The Nebraska Supreme Court, in City of Bayard v. North Central Gas Co.,164 Neb. 819, 831, 83 N.W.2d 861, 868 (1956), cited with approval Justice Story's discussion of the meaning of "for hire" in CitizensBank v. Nantucket Steamboat Co., 5 F. Cas. (No. 2730) 719, 725 (1811):
 I take it to be exceedingly clear that no person is a common carrier in the sense of the law, who is not a carrier for hire; that is, who does not receive, or is not entitled to receive, any recompense for his services. The known definition of a common carrier, in all our books, fully established this result. If no compensation is received, `he is not in the sense of the law a common carrier; but he is a mere mandatory, or gratuitous, bailee; and of course his rights, duties and liabilities are of a very different nature and character from those of a common carrier.
In addition, the Court quoted the following from 9 Am. Jur. Carriers § 9: "No person is a common carrier who does not carry for hire; that is, who does not receive, or is not entitled to receive, any compensation for his services."164 Neb. at 831-32, 83 N.W.2d at 868. Thus, inCity of Bayard, the Court recognized that "for hire" essentially means "for compensation." While the meaning of "for hire" in that case was discussed in the context of defining the activities of common carriers, it is likely the Court would adopt a similar construction in construing the term in relation to contract carriers.
In Travis v. Fry, 139 Fla. 522, 190 So. 793 (1939), the Supreme Court of Florida considered whether a contractor engaged by a power company to repair a power transformer, by hauling the transformer from a substation to his repair shop in a truck owned by the contractor, was unlawfully engaged in transporting property "for hire" because the contactor had not applied for or received authority to haul goods from the Florida Railroad Commission. The contractor had engaged in such activity under several agreements with the power company over a two-year period. The contractor "testified that `part of the money' he received was for hauling the transformers, but that `the bulk of the money' was for the preliminary work incident to hooking the transformer and loading it on his truck." 139 Fla. at 526, 190 So. at 794.
The Florida Motor Transportation Act [the "Act"] provided that "no auto transportation company shall operate any motor vehicle for the transportation of property for compensation on the public highways without first having obtained the necessary certificate or permit from the Railroad Commission." 139 Fla. at 527, 190 So. at 795. The Act further provided that "[a] person operating a motor vehicle `used in the business of transporting persons or property for compensation over any public highway *Page 5 
in this State' is included in the term `auto transportation company" . . . and that this term included "`every person or corporation. . .using. . .motor vehicles operated in the transportation of persons or property over public highways for hire, as defined in Section 1290.'" Id. "For hire" was defined to "include all motor driven vehicles, or trailers hauled by a motor vehicle, in use for transporting persons, commodities, or materials for compensation. . . . ." Id. at 526, 190 So. at 794. Determining that the contractor's transportation activities were "for hire" as defined in the Act, the Court stated:
 The [contractor] contends, and we think correctly, that he was not `in the business of transporting property for compensation,' strictly speaking; he further contends that that was merely incidental to his contract of installing the transformer. That may in a certain sense, be true, but it appears that he falls within the broad classification of transporting property `for hire' as defined in Section 1280, above quoted, such transportation of the heavy transformers being an essential part of his contract, and for which he was compensated by the power company, though no particular part of the contract price was allocated to such transportation. The section referred to does not provide that the use of a motor vehicle in transportation `for hire' must be the principal work done by the transporter for the owner of the goods hauled. Nor does it matter, under the Act, whether the compensation received for the actual hauling is greater or less than that received for the other work. 189 Fla. at 528, 190 So. at 795.[2]
The Contractors are compensated for the provision of all services under the Service Contracts in a lump sum amount, which is paid on a flat monthly basis. Service Contract at 1-2. One of the services the Contractors are required to provide is transportation, as the Service Contracts state that "[t]he Contractor is responsible for providing all in-state and out-of-state transportation related to the Contractor's primary business of serving the needs of children, youth and families." Service Contract at 6. While the Contractors are not separately compensated for providing transportation services, such services are part of the overall contractual responsibility assumed by the Contractors, and the Contractors are paid a lump sum to perform all services required by the Service Contracts. Accordingly, we conclude that the Contractors are engaged in "for hire" transportation by providing the transportation services required by the Service Contracts. *Page 6 
The Contractors contend that they are "private carriers" as defined in § 75-302(16) and thus not subject to the Commission's regulatory jurisdiction because the transportation provided under the Service Contracts is "not for hire". In support of this claim, the Contractors note that their employees providing transportation utilize their own vehicles and are reimbursed for their mileage by the Contractors. The Contractors emphasize that DHHS does not reimburse their employees, nor does DHHS reimburse the Contractors for the mileage reimbursement paid to their employees. But we believe this inquiry ignores the fact that the Contractors are engaged in providing transportation services as part of a contract for which they receive compensation to provide a number of services, including transportation. Under those circumstances, we conclude that the Contractors are not exempt "private carriers", but, rather, are engaged in contract carriage of persons "for hire" and thus subject to the Commission's regulatory jurisdiction.
B. Are the Contractors Exempt from the Commission's RegulatoryJurisdiction Because They are Engaged in Providing "EscortServices"?
Section 75-303 lists a number of categories of regulated motor carrier transportation of passengers for hire which are exempt from Commission jurisdiction under the Motor Carrier Act. Neb Rev. Stat. § 75-303 (2009). Subsection (11) of § 75-303 exempts"[a] motor carrier engaged in escort services and under contract with the Department of Health and Human Services. . . ." Neb. Rev, Stat, § 75-303(11) (2009). "Escort services means an attendant or caregiver accompanying a minor or persons who are physically, mentally, or developmentally disabled and unable to travel or wait without assistance or supervision." Neb. Rev. Stat. § 75-303(8) (2009). The question raised by this exemption is whether the transportation provided by the Contractors under the Service Contracts falls within the definition of "escort services" and thus is outside the Commission's regulatory jurisdiction under the Motor Carrier Act.
A statute should be given "a reasonable construction which best achieves that purposes, rather than a construction which would defeat it." Henery v. City of Omaha,263 Neb. 700, 705, 641 N.W.2d 644, 648 (2002). "In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." Piska v.Nebraska Dep't of Social Services,252 Neb. 589, 594, 567 N.W.2d 544, 547 (1997). "Statutory language is to be given its plain and ordinary meaning in the absence of anything indicating to the contrary." PSC Credit Services, Inc. v. Rich,251 Neb, 474, 477, 558 N.W.2d 295, 297 (1997).
"Escort services" is defined in § 75-303(11) as "an attendant or caregiver accompanying a minor or persons who are physically, mentally, or developmentally disabled and unable to travel or wait without assistance or supervision." An "attendant" is "one who attends to perform a service. . . ."http://www.merriam-webster.com/dictionary/attendant
(accessed May 28, 2010). To "attend" means "to look after" or "to go or stay with as a companion, nurse, or servant."http://www.merriam-webster.com/dictionary/attend *Page 7 
(accessed May 28, 2010). A "caregiver" is "a person who provides direct care (as for children, elderly people, or the chronically ill)."http://www.merriam.webster.com/dictionary/attendant
(accessed May 28, 2010). The plain and ordinary meanings of the terms "attendant" and "caregiver" indicate that, in order for the exemption for "escort services" to apply, the transport must involve a person who attends in some way to the needs of minor passengers or passengers who are physically, mentally, or developmentally disabled, or provides some level of care to minor passengers or persons who are physically, mentally, or developmentally disabled. While this does not necessarily foreclose the driver of a vehicle transporting minors or persons who are physically, mentally, or developmentally disabled, from providing the care or attendance required to qualify for the exemption, it strongly suggests that the driver must be engaged in providing services beyond merely driving the vehicle for the transport to fall within the definition of "escort services." This conclusion is bolstered by the use of the term "accompanying" in the definition, which means "to go with as an associate or companion."http://www.merriam-webster.com/dictionary/accompanying
(accessed May 28, 2010). This again implies the driver must provide care or service attending to the needs of the passenger above and beyond merely driving the individual.
The legislative history of the bill containing the "escort services" exemption supports this conclusion. The Introducer's Statement of Intent for the legislation states the bill would "add[ ] escort providers to the exempt category of transportation providers. . .", and that "[a]n escort is an individual who provides assistance for personal care or supervises a client who is unable to travel alone." Committee Recordson LB 820, 96th Leg., 1st
Sess., (Introducer's Statement of Intent) (March 8, 1999). The introducer's statement also stated that "[e]scort providers would be able to drive the client to an appointment, for example, in addition to the assistance they provide." Id. During the committee hearing on the bill, Dennis Loose, DHHS Chief Deputy Director, testified in support of the escort exemption, and described an escort as "an individual who accompanies a client in order to provide personal assistance and supervision to a client who is unable to travel alone." CommitteeRecords on LB 820 at 51. Marcia Alber, another DHHS representative, testified that an "escort" would be "use[d] when the individual needed an escort, would need the supervision and assistance and personal care."Committee Records on LB 820 at 55. Ms. Albers further stated:
 We would still use certified carriers when available, transporting an individual who did not need an escort. And an individual who would need an escort is someone who would need personal assistance and supervision while they're being transported. And also, like in the doctor's office, they would need the supervision. That's what our escort providers do now. And what this bill would do is allow them to also drive the individual to their doctor's appointment. Committee Records on LB 820 at 53.
"To ascertain the intent of the Legislature, a court may examine the legislative history of the act in question." Goolsby v. Anderson,250 Neb. 306, 309, 549 N.W.2d 153, 156 (1996). *Page 8 
This history indicates the Legislature intended the "escort services" exemption to be a limited exception allowing individuals providing attendance or supervision to minors or physically, mentally, or developmentally disabled persons to contract with DHHS to provide transportation of persons under their attendance or care. The exemption was not intended to apply in situations where a person merely acts as a driver transporting those persons. While the attendant or caregiver may also be the driver, again, the history demonstrates that some level of attendance or care must be provided by the driver beyond merely operating the vehicle providing transport of the minor or physically, mentally, or developmentally disabled person. Further, the history reflects that the individual attendant or caregiver acting as an escort would contract with DHHS to provide the transportation service, as opposed to the situation under the Service Contracts, where the Contractor is an entity providing transportation for a broad number of clients served under the terms of the Service Contracts.[3]
This limited construction of the "escort services" exemption is also supported by the regulations DHHS has adopted implementing the exemption. The DHHS regulations regarding Social Services for Families, Children and Youth, 474 NAC § 5-018, and the regulations pertaining to Social Services for Aged and Disabled Adults, 473 NAC § 5-018, contain provisions related to transportation services, including the provision of "escort services." The definition of "escort services in 474 NAC § 5-018.02 mirrors the statutory definition, providing the term "means an attendant or caregiver accompanying a minor or persons who are physically, mentally, or developmentally disabled and unable to travel or wait without assistance or supervision." "Transportation/Escort Services for Families" is defined to include service which enables children to travel to child care, health-related treatment or care, or to receive services as part of a child protective services safety plan or case plan. 474 NAC § 5-018.02. The rules provide that DHHS staff "may authorize transportation or escort services for ADC recipients, SSI and State Supplemental recipients age 18 or younger, State wards, low-income families, or families eligible without regard to income." 474 NAC § 5-018.03A. DHHS "staff must determine a client has a need for transportation services. . .", and "may authorize transportation or escort services only to meet client needs as described *Page 9 
in the definition of Transportation/Escort Services for Families. . . ." 47 NAC § 5-018.04 and 5-018.05. The regulations provide transportation standards for escort providers which include requiring the provider must: "1. Be an individual age 19 or older; 2. Have training or experience in working with children; 3. Have training or experience in providing personal assistance; 4. Agree to have his/her driving records reviewed, if the escort will drive; 5. Maintain information on specific needs of each client served; and 6. Report all changes observed to the client's services coordinator." 474 NAC § 5-018.06C. "Escort providers who personally drive the client must also meet all individual provider standards. . . ." 474 NAC § 5-018.06C. These individual provider standards include driver standards, vehicle standards, and registry and criminal background checks. 47 NAC § 5-018.06D. The rules establish rates for transportation services providing that "[t]he mileage rate for escort providers must not exceed the state employee mileage rate unless the escort is a certified carrier." 474 NAC § 5-018.08B4. The rules require that, "[b]efore authorizing transportation/escort services, [DHHS] staff must explore with the client the use of family, neighbors, friends, or community agencies that will provide the service without charge whenever possible." 474 NAC § 5-018.07.
Generally, in construing a statute, "the interpretation of a statute given by an administrative agency to which the statute is directed is entitled to weight." Vulcraft v. Karnes,229 Neb. 676, 678, 428 N.W.2d 505, 507 (1988). The DHHS regulations clearly contemplate that an "escort service provider" must be an "attendant" or "caregiver" engaged in providing services to meet the needs of the passenger beyond merely being the driver providing transportation. This is most evident by the requirement that escort service providers must have "training or experience in working with children" and providing "personal assistance." 474 NAC § 5-018.06C. Further, the regulations contemplate that DHHS will contract specifically with the actual provider of the escort services, and that it must determine the need for escort services transportation and authorize such services, for which the escort provider is to be compensated by DHHS "at a rate not to exceed the state employee reimbursement rate unless the escort is a certified carrier." 474 NAC §§ 5-018.02, 5.018.03, 5.018.04.
Further, "statutes relating to the same subject matter [will be construed] together so as to maintain a consistent and sensible scheme."Japp v. Papio-Missouri River Natural Resources Dist.,271 Neb. 968, 973, 716 N.W.2d 707, 711 (2006). "The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible." Id.
In 1993, LB 412 was enacted to address the provision of transportation service for clients of DHHS. The Introducer's Statement of Intent for the bill stated:
 LB 412 provides that individuals may contract with and transport Department of Social Services' clients without holding a certificate of public convenience and necessity issued by the Public Service Commission when the contractor will personally drive the vehicle, the compensation received is no *Page 10 
greater than the allowance for mileage expenses provided to state employees, and there is no certified carrier serving the area where the contractor will provide services, or the certificated carrier serving the area is incapable of providing the specific service needed by the department. Committee Records on LB 412, 93rd Leg., 1st Sess. (Introducer's Statement of Intent) (Feb. 1, 1992).
Neb. Rev. Stat. § 75-303.01 (2009), the current statute containing the provisions of LB 412, as amended on several occasions, provides, in pertinent part:
 The Department of Health and Human Services. . .may contract for transportation for its clients with a contractor that does not hold a certificate or which is not otherwise exempt under section 75-303 only if:
 (1) The proposed contractor is the individual who will personally drive the vehicle in question;
 (2) The only compensation to the contractor for the transportation is paid by the department at a rate no greater than that provided for reimbursement of state employees pursuant to section 81-1176 for the costs incurred in the transportation; and
 (3)(a) There is no regulated motor carrier serving the area in which the client needs transportation, (b) the regulated motor carrier serving the area is incapable of providing the specific service in question by its own written statement or as determined by the commission upon application of the regulated motor carrier or the department, or (c) the regulated carrier cannot or will not provide such service at the rate specified in subsection (2) of section 75-303.02.
Thus, this general statute provides that DHHS may contract for transportation services for its clients with a contractor that does not hold authority from the Commission only if the transportation is not exempt under § 75-303 or the contractor is: (1) An individual who will personally drive the vehicle used to provide the transportation; (2) The contractor only receives compensation no greater than the reimbursement rate for state employees; and (3) No regulated motor carrier serves the area in which the client needs transportation, the regulated motor carrier is incapable of providing the transportation, or the regulator motor carrier cannot or will not provided the transportation at the rate established in § 75-303.02(2).
Interpreting the escort services exemption, added to the list of exemptions in § 75-303 in 1999, in relation to the general provisions regarding DHHS transport of clients in § 75-303.01, it must be concluded that the escort services exemption cannot be construed so broadly as to include mere driving alone of minors or physically, mentally, developmentally disabled persons. If simply driving minors or persons who are physically, mentally, or developmentally disabled, were sufficient to qualify a person as an "attendant" or "caregiver" within the definition of "escort services", then regulated carriers would never be required to provide transportation services for such persons. *Page 11 
That, of course, is not how the "escort services" exemption has been construed and applied, at least until execution of the Service Contracts, as § 75-303.01 generally requires the use of regulated carriers unless an exemption applies or an individual provides the service at the state employee reimbursement rate and no regulated carrier is able or willing to provide the service. To construe the "escort services" exemption to broadly apply to simply driving minors or physically, mentally, or developmentally disabled persons, without attending to or caring for such person in some further capacity, would be contrary to the general intent underlying the provisions of § 75-303.01.
Recognition of the limited nature of the "escort services" exemption is also consistent with action taken by the Legislature in 2006 to allow individuals to contract with DHHS to provide transportation of persons eligible to receive transportation services. 2006 Neb. Laws, LB 1069, § 2 (codified as amended at
Neb. Rev. Stat. § 75-303.03 (2009)). This provision allows the reimbursement of individuals contracting to provide such transportation at a rate no greater than the reimbursement rate for state employees, but only if "[t]he eligible person receiving the transportation has chosen the individual to provide the transportation." Neb. Rev. Stat. § 75-303.03 (1)(b) (2009). Transportation provided by individuals pursuant to the statute "does not constitute transportation for hire." Neb. Rev. Stat. § 75-303.03(3) (2009). This limited exemption thus permits individuals to contract with DHHS to provide transportation services at the election of the recipient of transportation services, and the individuals are reimbursed only for mileage at the state employee reimbursement rate. This exemption, like the escort services exemption, is limited in nature, and must be construed in a way which renders it consistent and harmonious with the general provisions of § 75-303.01.
In view of the foregoing, it is our opinion that the transportation provided by employees of the Contractors under the Service Contracts does not fall within the "escort services" exemption in § 75-303(11). The language and history of the exemption indicates that escort service must be provided under a contract between the individual providing the transportation and DHHS, and not through a contract with an entity such as the Contractors. The provision of mass transportation of numerous clients under the Service Contracts is not consistent with the limited scope of the "escort services" exemption as illustrated by the legislative history of the exemption or the statutes and regulations governing transportation of DHHS clients.
If the Service Contracts were found to be a proper means to contract for escort services, it would still be necessary to establish that, in each instance, the driver providing the transportation is also providing some level of care or attendance to the minor passenger above and beyond merely driving the vehicle used to transport the minor. This is a factual question which we are unable to answer. At a minimum, however, the driver would have to meet the requirements in the DHHS regulations that they have "training or experience in working with children" or "training or experience in providing personal assistance." 474 NAC § 5-018.06C. To the extent the Contractors are using drivers that do not meet such requirements, or any of the other DHSS *Page 12 
standards for escort service providers, including the individual provider standards for drivers and vehicles, the transportation could not fall within the "escort services" exemption, even if it is determined that the Contractors may seek to employ the escort services exemption by contracting with DHHS to provide transportation services for clients served under the Service Contracts .
Indeed, there are certain DHHS regulatory requirements which appear to preclude the qualification of transportation by the Contractors of minors under the Service Contracts as exempt "escort services". For example, the DHHS regulations require a determination of the need for transportation or escort services for clients prior to authorizing such services, and provide for reimbursement by DHHS of escort service transportation providers. 474 NAC § 5-018.04 and 5-018.05; 474 NAC § 5-018.07. The regulations also require that, before authorizing transportation or escort services, DHHS staff must explore with the client the use of families, neighbors, friends, or community agencies to provide transportation without charge. 47 NAC § 5-018.07. It is difficult to see how transportation provided under the Service Contracts squares with these DHHS regulatory requirements.
You have also asked generally whether a driver may qualify as an escort by both driving the vehicle and attending to or caring for the needs of a minor or physically, mentally, or developmentally disabled person. In addition, you ask generally whether a driver may qualify as an escort if a minor is transported alone, and, if the minor is accompanied by an attendant or caregiver such as a parent or guardian, the driver may then act as merely a driver, not an escort. Given the general nature of these inquiries, we presume these questions do not pertain specifically to the transportation services provided under the Service Contracts.
As noted above, nothing in the language of the escort services exemption or definition of escort services precludes the driver from also being the attendant or caregiver of the minor or physically, mentally, or developmentally disabled person being transported. Indeed, the legislative history, as well as DHHS's regulations, support this interpretation. As to your second inquiry, if a driver actually provided additional services to qualify as an attendant or caregiver, the driver could qualify as an escort for transporting a minor alone. Based on the literal language of § 75-303(8), the terms "attendant" and "caregiver" are singular, which would appear to preclude the driver from qualifying as the escort as an attendant or caregiver if another person, such as a family member, acts as the "attendant" or "caregiver".
III. CONCLUSION
Based in the foregoing, we conclude that the Contractors' receipt of lump sum compensation to perform their obligations under the Service Contracts, which includes the transportation of DHHS clients, constitutes "for hire" transportation by the Contractors as contract carriers. We further conclude that the transportation services provided by employees of the Contractors for DHHS clients under the Service Contracts does not fall within the "escort services" exemption. The language and history of the *Page 13 
exemption indicates that escort service must be provided under a contract between the individual providing the transportation and DHHS, and not through a contract with an entity such as the Contractors, who seek to utilize the exemption to provide transportation of a broad base of clients under the Service Contracts. Even if the Service Contracts were determined to be a proper means to provide escort services, it would still be necessary to establish that, in each instance, the driver providing the transportation is also providing some level of care or attendance to the minor passenger above and beyond merely driving the vehicle used to transport the minor. Compliance with DHHS regulations governing the application of the "escort services" exemption would have to be shown for the exemption to apply for each transport, and, for the reasons noted above, it does not appear that compliance with many of the regulatory requirements can be established.
We recognize that the coordination of services approach underlying the Service Contracts is based on a desire by DHHS to establish a cohesive system of care to serve families by utilizing lead contractors to provide a full array of cores services, rather than contracting with many providers to perform separate services. In the area of transportation services, however, the Legislature has placed limits on the ability of DHHS to utilize persons other than regulated motor carriers to provide transportation services for its clients. Absent a legislative change, we do not believe that the manner in which transportation is provided under the Service Contracts comports with the requirements established by the Legislature.
Sincerely,
JON BRUNING Attorney General
L. Jay Bartel Assistant Attorney General
Approved:
___________________________ Attorney General
[1] Visinet, while it holds a contract carrier permit, is no longer providing services under its Service Contract with DHHS. In addition, Cedars Home for Children has terminated its agreement and discontinued providing services under its contract on June 30, 2010.
[2] The Court in Travis v. Fry noted that the transportation did "not show a `continuous or recurring carriage' under the same contract. . .", and that the contractor thus "was not a `private carrier' as defined in the Act. 139 Fla. at 528, 190 So. at 795. In addition, the Court emphasized that the hauling "was an important and essential part" of the contract, and stated its conclusion was based "on the facts of this particular case. . . ." Id. at 529, 190 So. at 795. The Nebraska statute defining a "private carrier" does not appear to contain language similar to Florida's definition of that term referenced by the Court in Travis v. Fry. Further, these observations by the Court do not detract from its finding that the transport at issue, while not separately compensated under the repair and service agreements, was nevertheless "for hire".
[3] This construction also finds support in the language of § 75-302(11), which exempts from Commission jurisdiction "[a] motor carrier engaged in escort services and under contract with the Department of Health and Human Services. . . ." Neb. Rev. Stat. § 75-302(11) (2009). A "motor carrier" is "any person other than a regulated motor carrier who or which owns, controls, manages, operates, or causes to be operated any motor vehicle used to transport passengers or property over any public highway in this state. . . ." Neb. Rev. Stat. § 75-302(12) (2009). The language of the "escort services" exemption in § 75-302(11), which incorporates the term "motor carrier", defined in § 75-302(12), thus indicates that the person owning, controlling, managing, operating, or causing to be operated the motor vehicle used in providing the escort service transportation will do so under a contract they have entered into with DHHS. Under the Service Contracts, that is the individual driver operating the motor vehicle, not the Contractors.