IN RE APPLICATION OF CONSUMERS PUBLIC POWER
DISTRICT.
CONSUMERS PUBLIC POWER DISTRICT, APPELLANT, V. TWIN
VALLEYS PUBLIC POWER DISTRICT, APPELLEE.
109 N. W. 2d 372

Filed June 2, 1961. No. 34962.

316

*Healey, Wilson & Barlow,* for appellant.

*Hugh W. Eisenhart* and *Perry & Perry,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal from a final order of the Nebraska State Railway Commission denying an application by Consumers Public Power District to build an electric transmission line in Harlan County.

The evidence shows that the Western Union Telegraph Company desires electrical service for a new microwave relay station approximately 2 miles north of Orleans, Nebraska, a point served by Consumers. Consumers has a contract to furnish this service. The service requires the construction of a new 3-wire, 2,400 volt line from Orleans to the microwave relay station, a distance of 2.3 miles. The application to the railway commission was for a permit, as required by section 86-318, R. R. S. 1943, to build this line. It is not disputed that the construction of the proposed electric transmission line would be in accordance with the requirements of the railway commission by providing sufficient clearance between

existing transmission, telephone, and telegraph lines so that the reasonable safety, operation, and efficiency of existing lines would not be interfered with, as required by section 86-317, R. R. S. 1943.

At the public hearing held on the application, objection was made to the approval of the application by the Twin Valleys Public Power District. It is the contention of Twin Valleys that the railway commission has statutory power to prevent a duplicating construction under the authority of section 86-319, R. R. S. 1943, which states in part: "Any parties interested may appear, file objection, and offer evidence in support thereof; Provided, however, that the commission shall take into consideration the fact of the prior occupancy of the senior company."

The evidence shows that the microwave relay station is located on Section 3, about 1,650 feet north of the southwest corner of the section. Twin Valleys has a single-phase distribution line along the west side of the road separating Sections 3 and 4 which crosses the road at the southwest corner of Section 3 to serve a farm customer on the southwest quarter of that section. In order for Twin Valleys to render the service required by the microwave relay station it would be required to convert 3½ miles of its single-phase line into a 3-phase, 2,400 volt line, which it asserts it can do more economically than can Consumers in the construction of its proposed new line. It is clear that the new line proposed by Consumers would parallel the single-phase line of Twin Valleys on the opposite side of the road for a distance of 1,650 feet and would cross over it at the southwest corner of Section 3. Twin Valleys has no contract to provide service for the microwave relay station.

The primary issue in this case is whether or not the railway commission has the power to prescribe the territory in which a public power company may render service. The Constitution by Article IV, section 20, in-

vests the railway commission with the regulation and general control of common carriers. Consumers and Twin Valleys, although public utilities, are not common carriers. While public utilities are subject to regulation by the state, any such regulatory power by the railway commission must originate from a delegation of legislative authority by legislative enactment. Twin Valleys contends that the power to prevent the construction of duplicating lines and to limit the territory to be served, and to thereby restrict competition, is granted to the commission by Chapter 86, article 3, R. R. S. 1943. Consumers contends that it does not. A determination of the meaning of the applicable sections is required.

In section 86-318, R. R. S. 1943, it is provided in part that: "If the voltage of any such line exceeds seven hundred volts, application to construct the same shall be made to the State Railway Commission." The contents of such an application are thereafter prescribed. Section 86-324, R. R. S. 1943, provides in part that: "The State Railway Commission shall have full power and authority to prohibit the construction of any line or lines found to be in violation of the terms of section 86-317. After the hearing provided for in section 86-319, it shall make such order and prescribe such terms and conditions for the location, construction and operation of the proposed line or lines as it may deem just and reasonable." Section 86-317, R. R. S. 1943, provides: "All lines constructed for the transmission of electric current, including telephone and telegraph lines, on the public highways or in other places in this state, except as provided in section 86-327, shall provide sufficient clearance between such lines and existing properly constructed transmission, telephone and telegraph lines so that the reasonable safety, operation and efficiency of existing lines shall not be interfered with."

We point out that the only authority the railway commission has to deny an application for the construction of a transmission line is for noncompliance with the

construction requirements of section 86-317, R. R. S. 1943. A certificate of public convenience and necessity is not required. Section 86-317, R. R. S. 1943, contemplates the existence of properly constructed transmission lines in the area of the proposed line. The only conclusion to be drawn from this is that such existing lines are to be protected by adequate clearance in order that their safety, operation, and efficiency will not be jeopardized. It cannot be gathered from this section that a new line is not to be permitted because another transmission line is already in the area.

In the case of City of Bayard v. North Central Gas Co., 164 Neb. 819, 83 N. W. 2d 861, the power of the railway commission to prescribe rates, regulate services, and exercise general control over a public utility was in issue. In that case we said: "In the light of the evidence and foregoing rules of law, we conclude that defendant is not a common carrier for hire or a consideration, and is not subject to regulation and control by the commission as a common carrier. Thus, we conclude that the state railway commission had no jurisdiction or authority to render the order involved herein. We find no constitutional or statutory provisions which would authorize us to hold otherwise." It is clear, therefore, that the railway commission authority over public utilities cannot be grounded on constitutional provisions and statutes authorizing it to regulate and control common carriers.

Twin Valleys asserts that the authority to deny applications other than for noncompliance with section 86-317, R. R. S. 1943, is found in section 86-319, R. R. S. 1943, wherein it is said: "Upon such application being filed, the railway commission shall notify all parties liable to be affected by the construction of such lines, to appear at a public hearing, at a time and place to be fixed by the commission for hearing of such application. Any parties interested may appear, file objections, and offer evidence in support thereof; Provided, however,

that the commission shall take into consideration the fact of the prior occupancy of the senior company."

The provision "that the commission shall take into consideration the fact of the prior occupancy of the senior company" cannot be construed as a grant of power to the railway commission to generally control and regulate public utilities, particularly public power companies. We think the provision means that in determining whether the application, route map, and specifications are sufficient to meet the requirements of section 86-317, R. R. S. 1943, the railway commission will see to it that transmission, telephone, and telegraph lines already in the area are protected as to their safety, operation, and efficiency. In other words, the new line for which approval is sought must protect transmission, telephone, and telegraph lines in the area and the railway commission may properly see to it that this is done by the applicant seeking to construct a new line before its application is approved. In construing the foregoing statutes together, as we are required to do, the provision relied upon by Twin Valleys can be given no other construction. The title to the act by which the foregoing provisions came into the statute sustains the construction we have given the provision. Such title states: "An act to amend sections 86-318, 86-322, 86-324 and 86-327, Revised Statutes of Nebraska, 1943, relating to electric transmission lines; to regulate the manner of construction of such transmission lines; to provide the extent of the jurisdiction of the State Railway Commission over the construction of such transmission lines; to repeal the original sections and section 86-320, Revised Statutes of Nebraska, 1943." Laws 1945, c. 258, p. 800. We submit that the title to the act clearly indicates the legislative intent to delegate to the railway commission power to regulate the manner of construction of transmission lines and to provide the extent of its jurisdiction in so doing. There is nothing to indicate a legislative intent to grant to the railway commission

any general powers of regulation and control over public power companies. Since the railway commission denied the application under an asserted authority which it did not possess, the result is controlled by City of Bayard v. North Central Gas Co., *supra*. The railway commission has no authority to restrict a public power company to the rendition of service in a specified area. Its attempt to do so is beyond the scope of its authority and cannot be sustained. The order denying the application for the construction of the proposed transmission line is therefore reversed.

REVERSED.

SIMMONS, C. J., participating on briefs.