IN RE COMPLAINT OF FECHT.
JOHN A. FECHT, ACTING SUPERVISOR OF PUBLIC WAREHOUSES, NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, V. DAVID CITY GRAIN COMPANY, INC., APPELLEE.
FRANK FICHTL ET AL., APPELLANTS.
344 N.W.2d 636

Filed February 24, 1984. No. 82-675.

Donn K. Bieber of Otrakovsky & Bieber, for appellants.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee Commission.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

David City Grain Company, Inc. (Grain Company), was a licensed public grain warehouse operating in David City, Nebraska. On March 31, 1981, the Nebraska Public Service Commission (hereinafter Commission) through John A. Fecht, its acting supervisor of public warehouses, filed a complaint before the Commission seeking to revoke defendant Grain Company's warehouse license. This complaint was styled "John A. Fecht, Acting Supervisor of Public Warehouses Nebraska Public Service Commission Complainant vs. David City Grain Co., Inc. . . . Defendant."

The complaint alleged, and evidence adduced later established, that an examination of Grain Company's warehouse, conducted by the Commission's inspectors on March 24, 1981, had disclosed shortages of wheat, corn, milo, and soybeans and that there was no grain at all in the warehouse. Pursuant to this complaint, the Commission on the same day temporarily suspended Grain Company's license. Thereafter, appropriate notices were published, and a hearing before the Commission was held on May 4, 1981. At this initial hearing John Fecht appeared with counsel and Grain Company appeared by counsel. Evidence was adduced by the complainant. No evidence was presented by Grain Company. On May 5, 1981, the Commission canceled Grain Company's warehouse license.

Thereafter, a notice was published informing the public that Grain Company's warehouse had been closed and that any depositors of grain in that warehouse should notify the Commission by September 1, 1981. Additionally, the depositors in the warehouse as determined by the Commission's audit were individually notified, and the Commission attempted to compile a list of storers of grain in the closed warehouse.

A hearing was held before the Commission on January 19, 1982, "for the purpose of determining valid

claims to the proceeds of the Public Grain Warehouse Bond" of defendant Grain Company. The Commission aptly described this hearing as "one more step in determining the storers of grain." At this hearing Mr. Fecht was present with Commission staff counsel. Three grain depositors were also present by counsel and, for the first time in the record, Frank Fichtl and Mildred Fichtl, with counsel, entered an appearance as "indemnitors on the bond." The New Hampshire Insurance Company, the statutorily required and Commission-ordered surety bond for the Grain Company, also appeared, for the first time on the record, by counsel. David City Grain Company, Inc., itself entered no appearances at this hearing nor at any subsequent hearing before the Commission. The Grain Company has been denominated a defendant and an appellee in this court, but has made no appearance here.

At this hearing, evidence was adduced by the Commission staff. Eight "public witnesses" were sworn, made statements, and submitted some evidence as to the amount of grain each claimed to have in the closed warehouse. In addition, the manager of the warehouse testified, as did Frank Fichtl, who testified that he was the indemnitor on the warehouse bond. The Commission took the matter under advisement.

The Commission hearing was reconvened on April 26, 1982, and further evidence was adduced. At this hearing the surety was present by counsel, the indemnitors were present with counsel, and Commission staff were present, as were "public witnesses."

On June 8, 1982, the Commission filed its "Opinion and Findings," setting forth in detail all the evidence adduced at the January 19 and April 26, 1982, hearings, and determining that depositors of grain held in grain bank accounts were entitled to recover against the surety bond. The Commission attached to its opinion and findings an appendix setting out a list with the amounts due to each of three grain de-

positors with "Open Storage Accounts" and the amounts due to each of 15 depositors who had "Grain Bank Accounts." The amounts were calculated at values as of March 31, 1981, and gave credit for storage due to the warehouse as of that date. The Commission ordered that the New Hampshire Insurance Company, as surety for the closed Grain Company, should deposit the sum of $18,274.33 with the Commission, to be disbursed to the persons named in the Commission's opinion. No mention was made in the order of any obligation of the indemnitors to anyone, although the Commission did note in its opinion that Frank Fichtl did testify that he had settled with 80.6 percent of all the people who had grain in storage.

On June 16, 1982, Frank Fichtl filed his motion for rehearing on the Commission order of June 8, 1982, alleging that the allowance of grain bank accounts was contrary to law and that the Commission erred in refusing "to allow the elevator to tender grain to the storers of grain." On June 17, 1982, the New Hampshire Insurance Company filed its motion for rehearing on general grounds.

On September 7, 1982, the Commission, after hearing, overruled the motions for rehearing. On October 6, 1982, Frank and Mildred Fichtl, indemnitors, and the New Hampshire Insurance Company, surety for the named defendant David City Grain Company, filed with the Commission their joint "Notice of Intention To Appeal."

In their joint brief on appeal the appellants set out the following assignments of error: "1. The Commission erred in finding that the grain bank accounts were covered by the bond. 2. The Commission erred in ordering the payment of moneys instead of in-kind grain to the storers of grain." For reasons hereinafter stated we cannot answer the first of these questions, but we do answer the latter and remand the cause for such further proceedings as the Commission may desire to initiate.

The Public Service Commission is initially provided for in article IV, § 20, of the Constitution of the State of Nebraska. That section provides in pertinent part as follows: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision." It is clear that the jurisdiction of the Commission is based on the Constitution insofar as jurisdiction over common carriers is concerned, and, in the absence of specific legislation, the Commission may exercise broad jurisdiction over all aspects of regulating common carriers.

The situation with respect to the Commission's jurisdiction over "public grain warehouses," as spelled out in Neb. Rev. Stat. §§ 88-501 to 88-524 (Reissue 1981), is different. The authority of the Commission in the instant case must spring from legislative enactment, and nothing else. A public warehouse cannot be considered a "common carrier." In *Consumers P. P. Dist. v. Twin Valleys P. P. Dist.*, 172 Neb. 315, 318, 109 N.W.2d 372, 374 (1961), we stated, "Consumers and Twin Valleys, although public utilities, are not common carriers. While public utilities are subject to regulation by the state, any such regulatory power by the railway commission must originate from a delegation of legislative authority by legislative enactment." In that case we determined that by the specific statute in question the Legislature delegated to the Commission (at that time called the Nebraska State Railway Commission) power only to regulate the manner of the construction of transmission lines and did *not* delegate any general power of regulation and control over public power companies.

Applying that same overall theory to the instant case, we determine that while public grain ware-

houses are not common carriers, such warehouses are subject to regulation by the state, that such regulation may be delegated to the Public Service Commission, but that such regulation must be exercised completely within the statutory scheme set out in Neb. Rev. Stat. ch. 88, art. 5 (Reissue 1981).

Chapter 88, article 5, gives the Commission broad licensing, bonding, regulating, inspecting, and investigating powers over all public grain warehouses. The Commission has properly exercised many of those powers in this case in suspending the license of Grain Company and in investigating thoroughly the rights of grain depositors in the failed warehouse. We determine, however, that the Commission exceeded its powers when it ordered the surety for the failed warehouse to pay a definite amount of money from its surety bond in to the Commission.

Section 88-515(3) provides in part: "In the event that the commission determines that a shortage of grain exists at a duly licensed warehouse, necessitating the closing of the warehouse, the commission may: (a) Take title to all grain stored in the public grain warehouse at that time in trust, for distribution on a pro rata basis to all valid owners, depositors, or storers of grain who shall be holders of evidence of ownership of grain. Such distribution can be made in grain or in proceeds from the sale of grain; *or (b) Commence a suit in district court for the benefit of owners, depositors, or storers of grain.*" (Emphasis supplied.)

This section sets out a logical plan for the situation where grain is in storage at a closed warehouse, in that the section authorizes the Commission to take title to the remaining grain and to conserve that grain for the benefit of grain depositors. That is not this case. Here, there was no grain, and to protect the depositors in that eventuality the statute authorizes the Commission to "[c]ommence a suit in district court for the benefit of owners, depositors, or storers of grain."

In such a suit, under appropriate pleadings, the relationships and liabilities between the depositors of grain and the bonding company, and between the bonding company and the indemnitors, could be determined and an appropriate, binding money judgment rendered so that all parties could enforce their respective rights. In actuality, neither the Commission nor this court, on this record, can make any disposition of the problem between the indemnitors and the depositors of grain. The indemnitors have no standing before the Commission nor, on this appeal, before this court. The grain depositors have a right to have the Commission "commence a suit" to assert their claims against the surety bond and, if the claims are established, to have an appropriate, binding, enforceable money judgment entered against that surety in the district court. That stated concept, of course, disposes of any claim that the indemnitors can satisfy obligations of the David City Grain Company, Inc., by tendering bushels of grain which depositors are required to accept.

The fact remains that the Commission did not have jurisdiction to enter a money judgment against the surety.

The judgment of the Commission is reversed and the cause remanded to the Commission for whatever further action it may desire to take under § 88-515(3).

REVERSED AND REMANDED.