Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/06/2018 09:17 AM CDT

Karen Amend et al., appellants, v. Nebraska
Public Service Commission, appellee.
___ N.W.2d ___

Filed January 12, 2018.    No. S-16-948.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Tort Claims Act: Appeal and Error.** Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

4. **Tort Claims Act: Immunity: Waiver: Appeal and Error.** An exception to the State's waiver of immunity under the State Tort Claims Act is an issue that the State may raise for the first time on appeal and that a court may consider sua sponte.

5. **Jurisdiction: Appeal and Error.** An appellate court has an independent duty to decide jurisdictional issues on appeal, even if the parties have not raised the issue.

6. **Constitutional Law: Immunity: Waiver.** Under the 11th Amendment, a nonconsenting state is generally immune from suit unless the state has waived its immunity.

7. **Tort Claims Act: Immunity: Waiver.** The State Tort Claims Act allows a limited waiver of the State's sovereign immunity, subject to statutory exceptions.

8. **Statutes: Appeal and Error.** Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation

to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

9. **Statutes: Immunity: Waiver.** Statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.

10. **Immunity: Waiver.** In order to strictly construe against a waiver of sovereign immunity, courts broadly read exemptions from a waiver of sovereign immunity.

11. **Statutes: Immunity: Waiver.** A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

12. **Political Subdivisions Tort Claims Act: Tort Claims Act.** The discretionary function exception is expressed in nearly identical language in the State Tort Claims Act and the Political Subdivisions Tort Claims Act; thus, cases construing the state exception apply as well to the exception granted to political subdivisions.

13. **Tort Claims Act: Immunity: Appeal and Error.** An appellate court must determine whether sovereign immunity lies from the nature of the underlying dispute. Where the facts are undisputed, whether an exception to immunity under the State Tort Claims Act precludes suit is a question of law.

14. **Public Service Commission: Constitutional Law: Administrative Law.** The Public Service Commission's authority to regulate public grain warehouses is purely statutory, in contrast to its plenary authority to regulate common carriers under Neb. Const. art. IV, § 20.

15. **Public Service Commission: Tort Claims Act.** The Public Service Commission is a state agency for purposes of the State Tort Claims Act, and as a result, the provisions of the act are applicable in tort suits against the commission.

16. **Tort Claims Act: Licenses and Permits.** State agencies may not be sued under the State Tort Claims Act for claims based upon the failure to suspend or revoke a license.

17. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Shawn D. Renner and Andre R. Barry, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

Douglas J. Peterson, Attorney General, and Timothy R. Ertz for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

This appeal concerns the dismissal of a complaint filed in the district court for Lancaster County under Nebraska's State Tort Claims Act (STCA)[1] which alleged the Nebraska Public Service Commission (PSC), the appellee, negligently failed to enforce Nebraska statutes and regulations against Pierce Grain Elevator, Inc. (PEI). The district court ruled appellants' claims were grounded in exceptions to the STCA's limited waiver of sovereign immunity and granted the PSC's motion to dismiss. We affirm.

## I. BACKGROUND

The following statement of facts is taken from allegations in appellants' complaint, which we accept as true for purposes of reviewing the district court's dismissal of the complaint.

Appellants are a group of over 30 farmers and farm management customers of PEI, a grain warehouse in northeast Nebraska, which failed and closed in March 2014. Throughout the fall of 2013 and spring of 2014, each appellant conducted business with PEI, unaware that PEI was financially unstable.

On July 15, 2013, the PSC performed a compliance review of PEI which showed outstanding checks written by PEI exceeded PEI's account balance by more than $603,000. PEI's owner equity was over $5.8 million in the negative, and its working capital ratio was $7.2 million in the negative. The PSC found PEI had over a half-million-dollar working capital deficiency dating back to at least December 31, 2012. The

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014).

PSC contacted PEI's bank and expressed concern but took no further action. Until its closure, PEI's net worth and working capital ratio remained negative by millions of dollars. Nevertheless, PEI continued to contract with appellants and take possession of their grain.

On March 5, 2014, the PSC terminated PEI's grain warehouse and grain dealer licenses. Appellants were in large part unpaid for their grain. Appellants suffered a cumulative financial loss of over $2.56 million.

In June 2016, appellants filed a complaint against the PSC under the STCA which alleged their losses resulted from the PSC's negligent failure to perform its obligations under Nebraska law. Appellants' lawsuit claims the PSC failed to enforce several Nebraska statutes and regulations which impose minimum financial requirements for grain dealers. In particular, appellants highlight a regulatory procedure which they contend, based on the facts of this case, imposed a mandatory duty on the grain warehouse director for the PSC to file a complaint before the PSC concerning PEI's law violations, obtain a hearing on the matter, and notify PEI and its security provider. Appellants contend, due to the PSC's failure to fulfill its legal duties, PEI continued to conduct business with appellants, which caused appellants' financial losses.

The PSC responded to appellants' complaint by moving to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(1). Following a hearing, the district court granted the PSC's motion. The court found appellants' suit was barred by sovereign immunity, because the substance of appellants' claims fell within the "failure to suspend or revoke a license" exception to the STCA's limited waiver of immunity provided in § 81-8,219(8). The court further found appellants' suit was barred by the STCA's discretionary function exception provided in § 81-8,219(1). The court dismissed appellants' claims with prejudice for lack of subject matter jurisdiction. Appellants filed an appeal, and we granted their motion to bypass the Nebraska Court of Appeals.

## II. ASSIGNMENTS OF ERROR

Appellants assign, restated and reordered, the district court erred in (1) dismissing appellants' claims for lack of subject matter jurisdiction under § 6-1112(b)(1) based on exceptions to the STCA, (2) concluding that appellants' claims are barred by the license revocation exception in § 81-8,219(8), (3) concluding that appellants' claims are barred by the discretionary function exception in § 81-8,219(1), and (4) dismissing appellants' complaint without leave to amend.

## III. STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[2]

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

[3] Whether the allegations made by a plaintiff constitute a cause of action under the STCA or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.[4]

## IV. ANALYSIS

We first address whether exceptions to STCA's limited waiver of immunity, enumerated in § 81-8,219, are affirmative defenses which the State must plead and prove. We then

---

[2] *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017).

[3] *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

[4] See, *Bartunek v. State*, 266 Neb. 454, 666 N.W.2d 435 (2003); *Hammond v. Nemaha Cty.*, 7 Neb. App. 124, 581 N.W.2d 82 (1998).

address whether the State has waived its sovereign immunity with respect to appellants' claims.

### 1. Exception to STCA's Waiver of Immunity Is Not Affirmative Defense Which State Must Plead and Prove

Appellants argue that the district court erred by considering application of exceptions to the STCA, because the PSC's motion to dismiss under § 6-1112(b)(1) did not raise affirmative defenses. Appellants contend that exceptions to the STCA are affirmative defenses which the State must plead and prove.

The PSC argues that even if consideration of exceptions to the STCA was improper, the district court reached the correct result. Alternatively, the PSC argues that we should revise Nebraska's affirmative defense rule.

[4,5] During the pendency of this appeal, we decided *Davis v. State*.[5] In *Davis*, we overruled our prior line of cases which held that exceptions to the limited waivers of sovereign immunity provided by the STCA and the Political Subdivisions Tort Claims Act (PSTCA)[6] are affirmative defenses which the State must plead and prove. We held that an exception to the State's waiver of immunity under the STCA is an issue that the State may raise for the first time on appeal and that a court may consider sua sponte.[7] We recognized this rule is more consistent with the settled principle that the lack of subject matter jurisdiction may be raised at any time by any party

---

[5] *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017) (overruling *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014); *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010); *Reimers-Hild v. State*, 274 Neb. 438, 741 N.W.2d 155 (2007); *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998); *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997); *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992); and *D.M. v. State*, 23 Neb. App. 17, 867 N.W.2d 622 (2015)).

[6] Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2012).

[7] *Davis, supra* note 5.

or by the court sua sponte.[8] We explained that an appellate court has an independent duty to decide jurisdictional issues on appeal, even if the parties have not raised the issue.[9] In light of this duty, a rule which treats exceptions to waivers of immunity as waivable affirmative defenses places courts in an unworkable position when a jurisdictional defect is apparent on the face of a plaintiff's complaint. Consequently, even where a party has not raised the issue, an appellate court has the power to determine whether a plaintiff's allegations, taken as true, show that a tort claim is facially barred by an STCA exception under § 81-8,219.

At argument, appellants acknowledged this recent change in the law and that their prior position that the PSC was required to plead and prove exceptions to the STCA as affirmative defenses is foreclosed by our recent decision.

## 2. STATE HAS NOT WAIVED SOVEREIGN IMMUNITY FOR CLAIMS BASED ON STATE AGENCY'S FAILURE TO SUSPEND OR REVOKE LICENSE

### (a) Conclusions of Law Regarding Claims Under STCA

[6-8] Under the 11th Amendment,[10] a nonconsenting state is generally immune from suit unless the state has waived its immunity.[11] Neb. Const. art. V, § 22, provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." The Legislature has provided limited waivers of the State's sovereign immunity through the STCA, subject to statutory

---

[8] *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

[9] *Davis, supra* note 5.

[10] U.S. Const. amend. XI.

[11] *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *Lamb v. Fraternal Order of Police Lodge No. 36*, 293 Neb. 138, 876 N.W.2d 388 (2016).

exceptions.[12] Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[13]

[9-11] It is well settled that statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.[14] In order to strictly construe against a waiver of sovereign immunity, we broadly read exemptions from a waiver of sovereign immunity.[15] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[16]

[12] The discretionary function exception under the STCA and PSTCA is expressed in nearly identical language; thus, cases construing the state exception apply as well to the PSTCA exception.[17] In analyzing § 13-910(4), the PSTCA equivalent to the STCA's "failure to suspend or revoke a license" exception under § 81-8,219(8), we have stated the language of the exception is clear and unambiguous.[18]

[13] An appellate court must determine whether sovereign immunity lies from the nature of the underlying dispute.[19]

---

[12] § 81-8,219; *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[13] *Lindsay Internat. Sales & Serv. v. Wegener*, 297 Neb. 788, 901 N.W.2d 278 (2017).

[14] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

[15] *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

[16] *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017).

[17] *Shipley, supra* note 12; *Lawry, supra* note 5, *overruled on other grounds, Davis, supra* note 5; *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

[18] *Rohde v. City of Ogallala*, 273 Neb. 689, 731 N.W.2d 898 (2007).

[19] See, *County of Lancaster v. State*, 247 Neb. 723, 529 N.W.2d 791 (1995); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994).

Where the facts are undisputed, whether an exception to immunity under the STCA precludes suit is a question of law.[20]

### (b) Provisions of STCA Apply to PSC

[14] The PSC is an independent regulatory body created by the Nebraska Constitution in article IV, § 20.[21] The PSC's authority to regulate public grain warehouses is purely statutory, in contrast to its plenary authority to regulate common carriers under Neb. Const. art. IV, § 20.[22] Under Neb. Rev. Stat. § 75-109.01(2) (Reissue 2009 & Cum. Supp. 2014), the PSC is vested with jurisdiction over grain pursuant to the Grain Warehouse Act[23] and the Grain Dealer Act.[24] Chapter 88, article 5, of the Nebraska Revised Statutes grants the PSC broad regulatory powers, including licensing authority, over all public grain warehouses.[25] A public warehouse cannot be considered a "common carrier."[26] As a result, the authority of the PSC to regulate public grain warehouses springs from legislative enactment, and nothing else.

Section 88-545 grants the PSC authority to enforce the Grain Warehouse Act and to adopt and promulgate rules and regulations to aid in the administration of the act. Section 75-903.01 permits the PSC to, upon the filing of a complaint and after a hearing, suspend or revoke the license of any grain dealer for failure to comply with the requirements of

---

[20] See *D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997).

[21] *Thompson v. Heineman*, 289 Neb. 798, 857 N.W.2d 731 (2015).

[22] *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015); *In re Complaint of Fecht*, 224 Neb. 752, 401 N.W.2d 470 (1987).

[23] See Neb. Rev. Stat. §§ 88-525 to 88-552 (Reissue 2014 & Cum. Supp. 2016).

[24] See Neb. Rev. Stat. §§ 75-901 to 75-910 (Reissue 2009 & Cum. Supp. 2016).

[25] *In re Complaint of Fecht*, 216 Neb. 535, 344 N.W.2d 636 (1984).

[26] *Id.*

the Grain Dealer Act or any rule or regulation adopted and promulgated pursuant to such act.

[15] The STCA defines "[s]tate agency" to include all "commissions of the State of Nebraska . . . the primary function of which is to act as, and while acting as, instrumentalities or agencies of the State of Nebraska."[27] The PSC's broad statutory authority over the business of grain dealing, as well as its jurisdiction over several other matters of public concern enumerated in § 75-109.01, demonstrates that the PSC is an instrumentality of the State and part of the sovereign power of the State. Further, in at least one other matter, we have applied the STCA to actions of the PSC.[28] Therefore, under the circumstance of the instant case, the PSC is a state agency for purposes of the STCA, and as a result, the provisions of the STCA are applicable here.[29]

### (c) Appellants' Claims Are Grounded in License Revocation Exception to STCA's Waiver of Immunity

As noted, if a statutory exception to the STCA's limited waiver of immunity applies to appellants' claims, the claims are barred. Here, we first address whether the "failure to suspend or revoke a license" exception precludes appellants' suit. The STCA provides that the State's waiver of sovereign immunity shall not apply to "[a]ny claim based upon the issuance, denial, suspension, or revocation of or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, or order."[30]

[16] Section 81-8,219(8) is clear and unambiguous. State agencies may not be sued under the STCA for claims based upon the failure to suspend or revoke a license.

---

[27] § 81-8,210(1).

[28] *D.K. Buskirk & Sons, supra* note 20.

[29] See, § 81-8,209; *Zimmerman v. Douglas Cty. Hosp.*, 252 Neb. 583, 563 N.W.2d 349 (1997).

[30] § 81-8,219(8).

We have referred to the principle that an appellate court must determine whether sovereign immunity lies from the underlying substance of a dispute as the "gravamen of the complaint test."[31] Under this test, parties cannot defeat the Legislature's intent to preserve exceptions to the State's sovereign immunity by attempting to plead around statutory exceptions through a "semantic recasting of events."[32]

Appellants argue, as a result of the PSC's negligent failure to perform its obligations in the months leading up to PEI's closure, appellants lost a total of over $2.56 million. Appellants allege the PSC had reviewed PEI's records and knew PEI was out of compliance with its legal financial requirements, but failed to enforce the law to ensure compliance. Specifically, appellants allege the PSC knew PEI had violated rules and regulations which required grain dealers to maintain a minimum net worth of $10,000[33] and maintain a working capital ratio of not less than 1 to 1.[34] Appellants argue the PSC's knowledge of PEI's law violations gave rise to a ministerial duty on behalf of the PSC to institute complaint proceedings against PEI under 291 Neb. Admin. Code, ch. 8, § 003.08, now codified as 291 Neb. Admin. Code, ch. 8, § 003.07 (2016). Section 003.07 of the Grain Warehouse Rules and Regulations provides:

> [I]f the Grain Warehouse Director or other Commission personnel have reasonable cause to believe that a grain dealer has violated the statutes or rules of the Commission, the Director or other Commission personnel will:
>
> 003.07A File a complaint before the Commission against the grain dealer setting forth the alleged violation.

---

[31] *Jill B., supra* note 16, 297 Neb. at 89, 899 N.W.2d at 263 (citing *Stonacek v. City of Lincoln*, 279 Neb. 869, 782 N.W.2d 900 (2010)).

[32] *Britton v. City of Crawford*, 282 Neb. 374, 386, 803 N.W.2d 508, 518 (2011). Accord *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005) (quoting *United States v. Shearer*, 473 U.S. 52, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985)).

[33] 291 Neb. Admin. Code, ch. 8, § 003.03H (2016).

[34] § 003.03I.

003.07B Obtain a hearing date on the complaint.

003.07C Notify the grain dealer and its security provider of the complaint and hearing date on the complaint.

Appellants argue that if such complaint proceedings had occurred, they would not have sustained any losses. They assert that PEI would have ceased doing business sooner, that appellants would not have deposited grain with and marketed grain through PEI, or that PEI would have recapitalized and would not have failed.

Appellants argue their claims are not grounded in the "failure to suspend or revoke a license" exception, because the complaint does not specifically allege the PSC was obligated to suspend or revoke PEI's license. Appellants argue the complaint alleges only that the grain warehouse director for the PSC was required to file a complaint and bring PEI's law violations to the attention of the PSC.

Appellants' arguments are flawed for two reasons. First, the natural outcome of the instituting of complaint proceedings under § 003.07 would have been the suspension or revocation of PEI's license. Section 003.08, titled "Suspension or Revocation of License," provides, upon the filing of a complaint, the PSC may temporarily suspend a grain dealer's license without a hearing.[35] If, following a hearing, the PSC finds the allegations in the complaint are true, then it may revoke the grain dealer's license. Thus, as the district court found, the claim that the PSC negligently failed to institute complaint proceedings against PEI is "inextricably linked" to a claim that the PSC negligently failed to revoke or suspend PEI's license.[36]

Second, appellants' complaint allegations are broader than they argue. Appellants' causation theory is not based only on the lack of notice of PEI's law violations, but that by failing to enforce financial rules and regulations against PEI, the PSC

---

[35] 291 Neb. Admin. Code, ch. 8, § 003.08 (2016).

[36] *Britton, supra* note 32, 282 Neb. at 386, 803 N.W.2d at 518.

allowed PEI to continue to conduct business while financially unstable, which ultimately led to PEI's failure and appellants' losses. As the PSC argues, appellants' causation theory cannot rely on lack of notice alone. The procedure provided under § 003.07 provides notice to the PSC, PEI, and PEI's security provider, and not grain dealer customers such as appellants. Based on the complaint allegations, but for the PSC's lack of enforcement of regulations during the months prior to PEI's closure, there would be no claim. Therefore, reading § 81-8,219(8) broadly, as we must, the gravamen of appellants' allegations of negligence is the PSC's failure to suspend or revoke PEI's license. Appellants' suit is thus barred under § 81-8,219(8).

[17] An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[37] Because we find that the PSC is immune from appellants' claims under the "failure to suspend or revoke a license" exception, we need not address whether appellants' claims are barred under the discretionary function exception. Further, we do not address appellants' assignment that the district court erred by dismissing the complaint without leave to amend, because the lack of subject matter jurisdiction for appellants' claims renders amending futile.

## V. CONCLUSION

For the foregoing reasons, we conclude that appellants' negligence claims are grounded in a state agency's alleged failure to suspend or revoke a license and that the Legislature has preserved sovereign immunity for such conduct. We affirm the district court's determination that it lacked subject matter jurisdiction over the case and that the PSC is entitled to judgment as a matter of law.

Affirmed.

Wright, J., not participating.

---

[37] *Salem Grain Co., supra* note 2.